UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MICHAEL BEAR,

      Plaintiff,

                                  Case No. 2:14-cv-43
   v.                            JUDGE GREGORY L. FROST
                                    Magistrate Judge Terence P. Kemp

DELAWARE COUNTY, OHIO, et al.,

      Defendants.

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant Sean Carpenter's motion to dismiss (ECF No. 41) and Plaintiff's memorandum in opposition (ECF No. 46). For the reasons that follow, the Court **GRANTS** the motion.

### I.      BACKGROUND

On July 28, 2012, Uriel Juares-Popoca ("Popoca") was driving on Interstate Route 71 ("I-71"). After receiving calls from travelers who were reporting a reckless driver they believed to be intoxicated, Delaware County Sheriff's Deputies Derek Beggs ("Beggs") and Christopher Hughes ("Hughes") (collectively "Defendant Deputies") went to the scene.[1] Beggs and Hughes found Popoca in a gray Ford F-150 pickup truck, stopped on a grass median on I-71. Ohio State Highway Patrol Trooper Sean Carpenter ("Carpenter" or "Defendant") arrived on the scene approximately five minutes after Beggs and Hughes.

Popoca spoke little English, and appeared to be intoxicated. Rather than performing the standard tests to determine a driver's level of intoxication, one of the Deputies decided to take Popoca to Taco Bell. Beggs and Hughes assert that it was Carpenter who suggested Taco Bell,

---

[1] Beggs, Hughes, Delaware County, Matt Williams, Jonathan Burke, and Jane and John Does 1-5 are also Defendants in this action. (ECF No. 1.)

while Plaintiff's complaint states that it was Beggs who suggested Taco Bell.  Carpenter locked Popoca's keys in the truck that Popoca had been driving.  The Deputies then took Popoca to a Taco Bell located approximately three miles away from Popoca's truck.

The manager of the Taco Bell at which Popoca had been dropped off called 911 at around 9:45 P.M.  Pursuant to that call, the Sheriff's Office dispatcher informed the office that the male who had been dropped off at the Taco Bell was asking Taco Bell employees to call the Sheriff's Office.  At 10:24 P.M., additional 911 calls were made, in which callers stated that a man was walking along the road, weaving in and out of traffic.  At 10:34 P.M., a 911 call came in reporting that a man walking in the roadway had suffered traumatic injuries.  That man was Popoca.  Popoca died from blunt impact to the head, neck, and trunk of his body due to a motor vehicle collision.

Carpenter, Beggs, and Hughes were all terminated from their positions following Popoca's death.  Beggs and Hughes were charged with dereliction of duty, in violation of Revised Code § 2921.44(A)(2).  Hughes pled guilty to a reduced misdemeanor charge prior to trial.  Beggs was found guilty of dereliction of duty following a jury trial.

Carpenter was charged with two counts of dereliction of duty in violation of Revised Code § 2921.44(A)(2).  An Ohio Court of Appeals reversed the lower court's jury verdict due to insufficiency of evidence.  *See State v. Carpenter*, 2013-Ohio-3439, 2013 WL 4028557 (Ohio Ct. App. Aug. 6, 2013).

On June 18, 2014, Defendant Sean Carpenter filed a motion to dismiss.  (ECF No. 41.) Plaintiff subsequently filed a response on July 14, 2014.  (ECF No. 46.)  This matter is fully briefed and ripe for this Court's review.

## II.    ANALYSIS

### A.  Standard of Review

Defendant moves for dismissal of the causes of action brought against him under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. When ruling upon a Rule 12(b)(6) motion, the Court is required to accept the well pleaded factual allegations contained in the pleading as true, construe them in the light most favorable to the non-moving party, and determine whether the factual allegations present any plausible claim. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  The Supreme Court has explained, however, that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Consequently, "[d]etermining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

A complaint must present "enough facts to state a claim to relief that is plausible on its face."  *Twombly,* 550 U.S. at 570.  To be considered plausible, a claim must be more than merely conceivable.  *Id.* at 556; *see also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545, 548 (6th Cir. 2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal,* 556 U.S. at 678.  The factual allegations of a pleading "must be enough to raise a right of relief above the speculative level...."  *Twombly,* 550 U.S. at 555; s*ee also Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 295 (6th Cir. 2008).

### B.  Failure to State a Claim on Which Relief Can be Granted

As a preliminary matter, the Court must address Defendant's application of the Ohio Court of Appeals decision, in which that court reversed Defendant's duty of dereliction conviction. *See In re Fordu*, 201 F.3d 693, 703 (6th Cir. 1999) ("[w]hen a federal court is asked to give preclusive effect to a state court judgment, the federal court must apply the law of the state in which the prior judgment was rendered in determining whether and to what extent the prior judgment should be given preclusive effect in a federal action") (internal citation omitted).

Defendant asserts that Plaintiff fails to state a claim on which relief can be granted. Carpenter argues that Plaintiff does not allege that Carpenter took any actions that directly injured Popoca. The complaint includes various assertions regarding the actions of Deputies Hughes and Beggs and it sets forth allegations about Defendant's failure to act. Carpenter relies on the Ohio Court of Appeals' decision for support, noting that the state court previously determined that he did not owe Popoca the duty to take action in the circumstances that form the basis of this litigation.

Plaintiff insists that Defendant is attempting to apply the state court's finding through claim and/or issue preclusion, but fails to meet the necessary criteria to do so. Pursuant to Ohio law, "the doctrine of res judicata consists of 'the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel.' " *Doe ex rel. Doe v. Jackson Local Sch. Sch. Dist.*, 422 F. App'x 497, 500 (6th Cir. 2011) (citing *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St.3d 59, 61, 862 N.E.2d 803, 806 (Ohio 2007)). Claim preclusion "prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action." *Id*. The doctrine of issue preclusion "holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a

court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different." *Fort Frye Teachers Ass'n v. State Employment Relations Bd.,* 81 Ohio St.3d 392, 395, 692 N.E.2d 140 (Ohio 1998), *rev'd in part on other grounds,* 102 Ohio St.3d 283, 809 N.E.2d 1130 (Ohio 2004).

Though issue and claim preclusion are separate, but related, doctrines, Plaintiff proffers his arguments on issue and claim preclusion simultaneously.  Since the doctrines should be applied independently of each other, the Court will address them separately.  Under Ohio law, claim preclusion requires four elements: "(1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action." *Hapgood v. City of Warren,* 127 F.3d 490, 493 (6th Cir. 1997) (applying Ohio law) (citation omitted); *see also Portage Cty. Bd. of Comm'rs. v. City of Akron,* 109 Ohio St.3d 106 , 846 N.E.2d 478.  A case must meet each of those criteria for claim preclusion to apply, and the party asserting the claim bears the burden of proof.  *Carroll v. City of Cleveland*, 522 Fed. App'x 299, 303 (6th Cir. 2013) (citing *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 520 (6th Cir. 2011)).

The Court need not discuss the first element, as it is undisputed that the Ohio Court of Appeals opinion is a final, valid decision on the merits by a court of competent jurisdiction. Additionally, the Court finds that Defendant has met the fourth element of claim preclusion.  The Ohio Supreme Court has explained, "[t]hat a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence

multiple claims." *Grava v. Parkman Township*, 73 Ohio St.3d 379, 382, 653 N.E.2d 226, 229 (Ohio 1995).  The Court continued, "[t]his remains true although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief."  *Id*.  Thus, the matter here arises from the same transaction or occurrence as *State v. Carpenter*.  Defendant has, therefore, met the first and fourth elements of claim preclusion.

Turning to the second element, Plaintiff states that he was not a party to that action, nor in privity with the prosecution in that case.  This Court agrees.  *State v. Carpenter* was a criminal action brought against Carpenter alone, and did not involve Plaintiff in any way.  Defendant does not explain how, if at all, Plaintiff was a party to the state court action.  Thus, Defendant has not met the second prong.  Considering the third element of claim preclusion, Plaintiff maintains that the civil rights claims at issue here were not at issue in the state proceedings.  The emotional distress and wrongful death claims were not litigated before the state court.  Moreover, the elements that comprise Plaintiff's civil claims do not overlap with the elements of dereliction of duty.[2]  None of Plaintiff's claims brought *sub judice* could have been litigated in the state action.  As such, Defendant has failed to meet the third element of claim preclusion.  Since a party is required to establish each element in order to successfully assert claim preclusion, and Defendant has neglected to do so, claim preclusion is not applicable here.

The Court next considers whether Defendant has met the requirements for asserting an argument under issue preclusion.  The doctrine of issue preclusion is applicable when a fact or issue " '(1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom [issue

---

[2] Carpenter was charged with dereliction of duty, and was accused of "negligently… [failing] to prevent or halt the commission of an offense or to apprehend an offender, when it is in the law enforcement officer's power to do so alone or with available assistance."  Ohio Revised Code Annotated § 2921.44(A)(2).

preclusion] is asserted was a party in privity with a party to the prior action.' " *In re Fordu*, 201 F.3d at 704 (quoting *Thompson v. Wing*, 70 Ohio St.3d 176, 183, 637 N.E.2d 917, 923 (Ohio 1994)). "Issue preclusion can only be applied against parties who have had a prior 'full and fair' opportunity to litigate their claims." *Graves v. Mahoning Cnty.*, 534 F. App'x 399, 405 (6th Cir. 2013*) cert. denied sub nom. Mahoning Cnty., Ohio v. Graves*, 134 S. Ct. 1310, 188 L. Ed. 2d 305 (2014).

As set forth in the above analysis, it is undisputed that the *Carpenter* Court is a court of competent jurisdiction, thereby meeting the second element of issue preclusion. Additionally, this Court has already determined that Plaintiff was not a party in privity with another party in the state court action. Defendant has, therefore, not met the third element of issue preclusion. The only element in dispute, then, is whether the issue in question was actually and directly litigated in the prior action. Plaintiff asserts that the issues in *State v. Carpenter* do not overlap with the issues brought by Plaintiff in the case *sub judice*. Specifically, Plaintiff's claims regarding a violation of 42 U.S.C. § 1983, negligent infliction of emotional distress and intentional infliction of emotional distress, and wrongful death were not litigated in the state action. If the Court were to construe issue preclusion as applying to the duty Defendant owed to Popoca during their interaction even that would not meet the first prong of issue preclusion. Indeed, Defendant failed to explain how, if at all, the duty required by dereliction of duty, and whatever duty is applicable in this case, are the same or similar. Thus, neither a fact nor an issue that has been brought here was litigated in the prior action, and Defendant has failed to meet the elements of issue preclusion.

Because Defendant has not demonstrated sufficiently why the Ohio Court of Appeals finding in *State v. Carpenter* regarding Defendant's duty to Popoca should apply here, and has

not met the requirements for either issue or claim preclusion, the Court need not further discuss the state court's determination of Defendant's applicable duty as it pertains to the Plaintiff's enumerated claims.

a.  *42 U.S.C. § 1983*

Plaintiff first alleges a violation of 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

To prevail on a § 1983 claim, a plaintiff must satisfy two prongs: (1) a constitutional deprivation; (2) by a person acting under the color of federal law.  According to Plaintiff's complaint, the § 1983 claim is brought due to a violation of "the right to equal protection of the law and the right to receive due process under the Fourteenth Amendment…and a right to held safely under the Fourth Amendment."  (ECF No. 1 at 9.)

Defendant argues that he cannot be held liable of a § 1983 violation as stated by Plaintiff. The complaint includes allegations of Defendant's failure to act at various points during his interaction with Popoca, and Defendant insists that such failures do not amount to liability. Defendant further contends that he did not have a legal duty to act.  In so claiming, Carpenter relies on the Sixth Circuit's finding in *King v. Samara*, 680 F.3d 686 (6th Cir. 2012), and *Salehpour v. University of Tennessee*, 159 F.3d 199 (6th Cir. 1998).  Both *King* and *Salehpour* discuss liability in the context of supervisory liability, which is not applicable here.  Supervisory liability requires a showing that the supervisor authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the subordinate.  *See Petty v. County of Franklin*, 478 F.3d 341,

349 (6th Cir. 2007).  Plaintiff's complaint does not include allegations regarding supervisory liability under § 1983.  Thus, Defendant's arguments are not well taken, insofar as they rely on *King* and *Salehpour*.

Defendant further claims that the complaint does not include allegations that Carpenter exerted any control over the decisions of the Defendant Deputies, nor that his failure to intervene in the Deputies' decision making process violated Ohio law.  In a footnote, Defendant contends that the complaint fails to set forth a claim based on a theory that Carpenter owed Popoca a duty of protection.  Citing the Supreme Court's decision in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), Defendant states that, barring a special relationship, the duty to protect "arises when a state officer affirmatively exercises the power to restrain an individual's liberty," and such a duty is not present in Plaintiff's complaint.  (ECF No. 41 at 5.)

Plaintiff asserts that the complaint alleges that Carpenter had a duty to act due to his involvement and participation in the situation.  Acknowledging Defendant's reference to *DeShaney*, Plaintiff argues that he raises a state-created danger claim, which, along with the custody exception, is an exception to the *DeShaney* analysis.  *See McQueen v. Beecher Community Schools*, 433 F.3d 460 (6th Cir. 2006); *see also Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005).  Plaintiff further contends that state officials are still capable of violating the Due Process Clause even in noncustodial settings.  *Caldwell v. City of Louisville*, 200 F. App'x 430, 434 (6th Cir. 2006) (internal citations omitted).

Plaintiff analogizes the case at hand to *Davis v. Brady*, 143 F.3d 1021 (6th Cir. 1998), in which Davis, a homeless man, was arrested by police after drunkenly breaking the windows of a local mission.  Upon finding the county jail at capacity, the officers were instructed to release

Davis "if he was not so drunk that he would be a hazard to himself." *Id*. at 1023.  The officers, however, ignored their order, took Davis to a road outside the city limits, and left him there.  *Id*. Davis alleged that the officers threw him out of the car, forced him to the ground, and verbally insulted him, before leaving him alone on the roadside.  *Id*.  Davis walked to a nearby house and called a different police officer for a ride back to town.  *Id*.  While waiting for the officer to arrive, Davis was hit by a car, rendering him a semi-quadrapalegic.  *Id*.  The *Davis* Court found that, under *DeShaney*'s custodial exception, the officers had "a duty to ensure that they were not placing [Davis] in danger."  *Id*. at 1025.

According to Plaintiff, the complaint sets forth a sufficient basis of state-created danger against Carpenter.  Plaintiff asserts, however, that Carpenter is particularly culpable because "the scheme was based on animus against [Popoca] due to his national origin."  (ECF No. 46 at 9.) Plaintiff claims that Carpenter was present while Popoca was allegedly taunted by the Defendant Deputies, and that Carpenter knew about the Deputies' decision to take Popoca to a Taco Bell. Plaintiff further relies on the Defendant Deputies' answer, in which they allege that it was Carpenter's suggestion to take Popoca to a Taco Bell, which Plaintiff construes to mean that Carpenter was an active participant in the decision concerning how to handle Popoca.  Plaintiff notes that Defendant locked Popoca's keys in his trunk, which contained cans of beer.  Though Plaintiff acknowledges that Carpenter did not physically transport Popoca to Taco Bell, he maintains that Carpenter contributed to the scheme.  Finally, Plaintiff argues that Carpenter was aware that Popoca was weaving in and out of traffic after leaving the Taco Bell, furthering supporting Plaintiff's belief that Carpenter's actions contributed to the level of danger in Popoca's situation.

Pursuant to the Due Process Clause of the Fourteenth Amendment, a state does not have "an affirmative duty to protect its citizens against private acts of violence, but rather, [the Fourteenth Amendment] places limitations on affirmative state action that denies life, liberty, or property without due process of law." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1065 (6th Cir. 1998) (citing *DeShaney*, 489 U.S. at 195). "[A]n affirmative duty to protect an individual against private acts of violence is imposed where a 'special relationship' exists between the state and the private individual." *Id.* at 1066 (citing *DeShaney*, 489 U.S. at 199-201). There are two exceptions to the *DeShaney* Court's special relationship rule: (1) the custody exception and (2) the state-created danger exception. *Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005). For the purposes of this analysis, the Court need only focus on the state-created danger exception.[3]

The *DeShaney* Court "left open the possibility that the state may be liable for private acts which violate constitutionally protected rights despite the absence of a special relationship." *Kallstrom*, 136 F.3d 1066. In *Kallstrom*, the Sixth Circuit explained:

> while the state generally does not shoulder an affirmative duty to protect its citizens from private acts of violence, it may not cause or greatly increase the risk of harm to its citizens without due process of law through its own affirmative acts. Although our circuit has never held the state or a state actor liable under the Fourteenth Amendment for private acts of violence, we nevertheless have recognized the possibility of doing so under the state-created-danger theory.

*Id.* (citing *Sargi v. Kent City Bd. of Educ.,* 70 F.3d 907, 912–13 (6th Cir. 1995); *Jones v. City of Carlisle,* 3 F.3d 945, 949–50 (6th Cir. 1993)). Plaintiffs who allege a constitutional tort in violation of § 1983 must show a " 'special danger' in the absence of a special relationship

---

[3] The custody exception "applies in in situations where 'the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety.' " *Cutlip v. City of Toledo*, 488 F. App'x 107, 113 (6th Cir. 2012) (quoting *DeShaney*, 489 U.S. at 199-200); *see also Schroder v. City of Fort Thomas*, 412 F.3d 724, 727-28 (6th Cir. 2005). Plaintiff only asserts that his § 1983 action falls within the state-created danger exception.

between the state and either the victim or the private tortfeasor.  The victim faces "special danger" where the state's actions place the victim specifically at risk, as distinguished from a risk that affects the public at large."  *Id*.

> To establish a state-created danger claim, a plaintiff must demonstrate:

>> (1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff.

*Walker v. Detroit Pub. Sch. Dist.*, 535 F. App'x 461, 464 (6th Cir. 2013) (internal citations omitted).  The Sixth Circuit has clarified that "[r]ather than focusing on the often metaphysical question of whether [officials'] behavior amounts to affirmative conduct or not, we have focused on whether [the victim] was safer before the state action than he was after it."  *Id*. at 464-65.

Plaintiff's complaint does not contain facts sufficient to show that Carpenter committed an affirmative action that created or increased Popoca's risk of exposure to a third party's violent act.  It is well established that "a failure to act is not an affirmative action under the state-created danger theory."  *Jones v. Reynolds*, 438 F.3d 685, 691-92 (6th Cir. 2006) (*collecting cases*).  The only affirmative act that Carpenter is alleged to have committed is locking Popoca's keys in the trunk of his truck.  (ECF No. 1 at 5).  Defendant Deputy Hughes is cited in the complaint as having driven Popoca to Taco Bell.  Conversely, Plaintiff accuses Carpenter of *failing to stop* the Deputies alleged behavior.  *See Langdon v. Skelding*, 524 F. App'x 172, 176 (6th Cir. 2013) (defendants' decision to close a child abuse investigation "merely show[ed] that the defendants did not do enough to investigate the complaints of abuse [which] is a mere failure to act," and the Court found that the relevant claim had been dismissed properly).  Plaintiff has not identified

"conduct 'by [Carpenter] which either created or increased the risk' of harm to which [Popoca] was exposed." *Koulta v. Merciez*, 477 F.3d 442, 445-46 (6th Cir. 2007).

In *Cartwright v. City of Marine City*, 336 F.3d 487, 489 (6th Cir. 2003) two police officers picked up an intoxicated Cartwright who was walking along the shoulder of Mile 26 Road around midnight on a foggy night, and offered him a ride, which he accepted. *Id.* at 489. The officers were on their way to do a prisoner pickup at a convenience store. *Id.* Cartwright got out of the car at the convenience store, and, after refusing to subject himself to a pat down that was required for him to ride in the backseat with the prisoner, Cartwright stayed there. *Id.* At approximately 2:25 A.M., Cartwright was run over and killed on Mile 26 Road; his blood alcohol level was .27. *Id.* The *Cartwright* Court determined that "[t]he question is not whether the victim was safer *during* the state action, but whether he was safer *before* the state action than he was *after* it." *Id.* at 493 (emphasis in original) (citing *DeShaney*, 489 U.S. at 201) (internal quotation omitted). Ultimately, the Court found that the police officers' actions were, at most, a failure to act, because the plaintiff could not demonstrate "that defendant officers created or increased the risk that Cartwright would be struck by a vehicle." *Id.* As such, the officers were not liable under the state-created danger exception. *Id.*

Even if Plaintiff had shown that Carpenter was an active participant in the decision to take Popoca to Taco Bell, and the party who had actually transported him there, Plaintiff has not shown how that action increased or decreased Plaintiff's risk of harm. Popoca was stopped on the side of the highway when the Defendant Deputies found him in his intoxicated state, and he was taken to a Taco Bell, a location presumably less dangerous than the side of a highway. Considering those facts in the light most favorable to Plaintiff, Popoca was identically situated in a potentially dangerous situation when he was at Taco Bell, but he was not placed at higher risk

of harm.  Without evidence in the complaint to show that Carpenter affirmatively acted to place Popoca at a greater risk of harm, Plaintiff has failed to meet the first element of the state-created danger exception.  The Court hereby **DISMISSES** the first cause of action in Plaintiff's complaint as it pertains to Carpenter.

#### b.  Wrongful Death

Under Ohio's wrongful death statute, "[w]hen the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the person who would have been liable if death had not ensued…shall be liable to an action for damages."  O.R.C. § 2125.01.  To establish a claim for wrongful death, a plaintiff must meet three elements: "(1) the existence of a duty owed to the plaintiff's decedent; (2) a breach of that duty; (3) proximate causation linking the breach of the duty to the decedent's death."  *CBC Engineers & Associates Ltd. v. Miller Aviation, LLC*, 880 F. Supp. 2d 883, 888 (S.D. Ohio 2012) (internal citation omitted); *see also Littleton v. Good Samaritan Hosp. & Health Ctr.*, 39 Ohio St. 3d 86, 92, 529 N.E.2d 449, 454 (Ohio 1988).

Defendant argues that he did not have a duty to protect Popoca, nor have a special relationship with him that would have warranted protection.  Because there is no duty to prevent harm to a person with whom the defendant does not have a special relationship, Carpenter asserts that he cannot be held liable for Popoca's death under § 2125.01.  Defendant points to the state court's finding in *State v. Carpenter* as evidence that he did not owe Popoca a duty that renders him liable under Ohio's wrongful death statute, but the Court shall not consider those arguments. *See supra* section II.B.

Carpenter also relies on *Estate of Ridley v. Hamilton County Board of Mental Retardation & Developmental Disabilities*, 102 Ohio St. 2d 230, 233-34, 809 N.E.2d 2, 6 (Ohio

2004), in which the Court considered whether the Hamilton County Board of Mental Retardation and Developmental Disabilities should be held liable for the death of Jerome Ridley, a mentally retarded adult who received assistance from the Board.  The Court found that, based on the relevant statute, the Board itself did not have a duty that it had breached, and therefore could not be held liable for Ridley's death.  *Id*.  The Court determined, however, that two individual employees of the Board did owe Ridley a duty.  *Id*.  Despite the individuals' duty, the Court did not hold those individuals liable due to the Estate's failure to allege sufficient facts that the employees breach of duty contributed to Ridley's death.  *Id*.

Plaintiff contends that the complaint sets forth facts sufficient to show that Defendant should be held liable for the wrongful death of Popoca.  In particular, Plaintiff claims that Carpenter owed Popoca a duty of care under the state-created danger theory.  Plaintiff insists that Carpenter breached his alleged duty, which, in turn, caused Popoca's death.

Plaintiff's argument rests entirely on Carpenter's purported duty of care pursuant to the state-created danger exception under *DeShaney*.  489 U.S. at 199-201.  This Court, however, has determined that Plaintiff failed to present facts sufficient to establish Carpenter's liability pursuant to that exception.  Plaintiff does not proffer any additional information to support his claim that Carpenter must be held liable under Ohio's wrongful death statute.  Further, the complaint lacks factual support that, standing alone, demonstrates Carpenter's liability.  Considering the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff's wrongful death claim is not supported sufficiently by the complaint.  Thus, the Court **DISMISSES** the third cause of action in Plaintiff's complaint for wrongful death insofar as it applies to Defendant Carpenter.

15

*c.   Intentional Infliction of Emotional Distress*

The final cause of action brought against Carpenter is Plaintiff's assertion that "Defendants Beggs, Carpenter, Burke, Hughes, Williams, and Does negligently and intentionally inflicted severe emotional distress on Mr. Popoca."  (ECF No. 1 at 10.)  Though Plaintiff seemingly asserts the separate claims of negligent infliction of emotional distress ("NIED") and intentional infliction of emotional distress ("IIED"), neither party's brief addresses Plaintiff's NIED claim.[4]  Thus, the Court need only discuss whether the IIED claim brought against Defendant should be dismissed.

It is well settled under Ohio law that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress."  *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, and Helpers of America*, 6 Ohio St. 3d 369, 453 N.E.2d 666, 667 syllabus (1983), *partially abrogated on other grounds by Welling v. Weinfeld*, 113 Ohio St.3d 464, 866 N.E.2d 1051 (2007) (addressing false-light invasion of privacy).  The elements of an IIED claim in Ohio are (1) that the defendant intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress to the plaintiff; (2) that the defendant's conduct was extreme and outrageous, (3) that the defendant's conduct proximately caused the plaintiff's psychic injury; and (4) that plaintiff's emotional distress was so serious that

---

[4] Defendant seems to treat NIED and IIED claims somewhat interchangeably, using phrases like "…in order to sustain a claim of intentional or negligent infliction of emotional distress."  (ECF No. 41 at 7).  Even when citing the four elements of an IIED claim brought pursuant to Ohio law, Defendant introduces it by stating, "[t]o prevail on an intentional or negligent infliction of emotional distress claim under Ohio law…"  (ECF No. 41 at 6).  NIED and IIED, however, are statutes that must be considered and analyzed independent of each other.  The case from which Defendant cites the Ohio IIED standard clearly states "[t]o maintain a claim for *intentional infliction of emotional distress*…"  *McPherson v. Goodyear Tire & Rubber Co.*, 2003-Ohio-7190, 2003 WL 23094976, at *9 (Ohio Ct. App. 2003) (emphasis added).  Defendant, however, mistakenly construes the NIED standard and IIED standard as being interchangeable.

no reasonable person could be expected to endure it.  *Ekunsumi v. Cincinnati Restoration, Inc.,* 120 Ohio App.3d 557, 562, 698 N.E.2d 503 (1997).

Defendant only addresses the second prong of the IIED analysis—whether his conduct was extreme or outrageous.  Carpenter asserts that the complaint does not include any facts that show that he engaged in extreme or outrageous conduct.  Citing *Doe v. Roman*, Defendant acknowledges that some Ohio courts have recognized that the failure to act can constitute extreme and outrageous conduct.  2002-Ohio-6671, 2002 WL 31732468, at *5-6 (Ohio Ct. App. 2002).  Defendant argues, however, that in the absence of duty, the failure to take action does not rise to the level of outrageous conduct required for an IIED claim.  Defendant looks for support in *Homan v. George*, in which an Ohio Court of Appeals found that a homeowner acting as a social host did not owe an intoxicated person a duty to discontinue serving alcohol.  127 Ohio App. 3d 472, 477, 713 N.E.2d 432 (Ohio Ct. App. 1998).  The *Homan* Court stated, "[t]he law imposes a duty to refrain from active misconduct that causes positive injury to others, but does not impose a duty to take affirmative action to aid or protect another."  *Id*. at 475.  Defendant claims that *Homan* is analogous to the case *sub judice*, and supports Defendant's argument that his failure to arrest or take other actions regarding Popoca does not render him liable under IIED's requisite level of extreme or outrageous conduct.

Plaintiff asserts that the allegations set forth in the complaint rise to the level of outrageous conduct.  Plaintiff argues that Defendant's participation in the conversation with the Defendant Deputies prior to taking Popoca to Taco Bell, along with Carpenter's alleged choice to ignore the dispatcher's announcements concerning Popoca, show that Defendant acted intentionally and recklessly, with discriminatory intent and deliberate indifference.  Moreover, Plaintiff insists that Defendant's reliance on *Homan* is misguided, at best.  Plaintiff proffers that

17

the social host liability discussed by the *Homan* Court is distinguishable from the facts of this case because Carpenter was not a social host.  Finally, Plaintiff argues that, because of Popoca's national origin, Carpenter endangered Popoca and then did nothing to stop such danger from ultimately harming Popoca.

The standard in Ohio imposes liability only where " 'the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" ' "  *Torres v. White,* 46 F. App'x 738, 755 (6th Cir. 2002) (quoting *Yeager,* 6 Ohio St.3d at 375 (internal citation omitted).  The standard has also been described as requiring facts indicating conduct that a reasonable person could conclude is "beyond all possible bounds of decency."  *Cf. Liadis v. Sears, Roebuck and Co.,* 47 F. App'x 295, 299 (6th Cir.2002) (declining to impose liability for intentional infliction of emotional distress when facts do not rise to quoted standard) (quoting *Yeager,* 6 Ohio St.3d at 374-75, 453 N.E.2d at 671)); *Torres,* 46 F. App'x at 756-57.

Taking the facts in the light most favorable to Plaintiff, there is not sufficient factual support for the IIED claim brought against Carpenter.  Though Defendant discusses only the second prong of the analysis, and cites a case that this Court does not consider to be analogous to the case *sub judice*, it is clear that Defendant's conduct did not rise to the level of being outrageous, as required by Ohio law.  Moreover, despite Plaintiff's assertions that Defendant's actions were grounded in racial bias, which Plaintiff suggests should be sufficient to constitute IIED, the facts set forth in the Complaint do not show that Defendant's conduct met the four elements required for an IIED claim.  Because Plaintiff's complaint does not proffer an adequate factual basis to show that Defendant's actions, or failure to act, rose to the level of IIED, the

18

Court hereby **DISMISSES** Plaintiff's fourth cause of action for NIED/IIED as it applies to Defendant Carpenter.

### III.    CONCLUSION

For the foregoing reasons, the Court concludes that Defendant has demonstrated sufficiently that Plaintiff's complaint does not provide adequate factual support to sustain the three claims brought against Defendant.  The Court therefore **GRANTS** Defendant's motion to dismiss.  (ECF No. 41.)

**IT IS SO ORDERED**.

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE